UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CEVA LOGISTICS U.S., INC., et al.,<br><br>    Defendants. | Case No. 16-cv-04282-WHO<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Dkt. No. 13 |

## INTRODUCTION

The central question in defendants Real Time Staffing Services, LLC., Select Specialized Staffing, LLC (together "Real Time"), and CEVA Logistics U.S., Inc. ("CEVA") motion to compel arbitration is the impact of the Ninth Circuit's recent decision in *Morris v. Ernst & Young*, No. 13-16599, 2016 WL 4433080 (9th. Cir. Aug. 22, 2016) on a putative wage and hour class action where plaintiff Diana Gonzalez has signed an arbitration agreement that waives her class claims with no right to opt out and no provision requiring class arbitration. *Morris* holds that a class waiver with no opt out right is unenforceable under the NLRA, and *Stolt-Nielsen S.A. v. Animal Feeds Int'l. Corp.*, 559 U.S. 662, 684 (2010) holds that I cannot compel class arbitration where there is no agreement to do so. As a result, I cannot enforce the arbitration agreement, and defendants' motion to compel is DENIED.

## BACKGROUND

Real Time is a staffing company that provides temporary staffing for client companies in the United States. Declaration of Joshua Gleason ("Gleason Decl.") ¶ 4 (Dkt. No. 13-1). Gonzalez worked as a non-exempt hourly employee for placement with Real Time's clients from approximately July 2015 to December 2015. FAC ¶ 5; Gleason Decl. ¶ 12. During this time, Real Time assigned Gonzalez to work for CEVA as a routing clerk. Motion to Compel ("Mot.") at 4

1  (Dkt. No. 13). Gonzalez alleges that defendants failed to provide their employees with meal
2  breaks, rest periods, overtime wages, and other protections as required under California and
3  Federal law in violation of the (1) California Labor Code, (2) California Business and Professions
4  Code §§ 17200, (3) Fair Labor Standards Act, and (4) the California Private Attorneys General
5  Act ("PAGA"). First Amended Complaint ("FAC") ¶ 1 (Dkt. No. 1-2).

6  Real Time contends that on July 7, 2015, Gonzalez submitted an online application for a
7  position with Real Time. Mot. at 3; Gleason Decl. ¶ 11. To complete Real Time's online
8  application, an applicant must go to Real Time's website and submit personal information
9  including his or her "name, contact, information, the last four digits of their social security
10 number, and job history." Mot. at 2; Gleason Decl. ¶ 7. Applicants must also place an e-
11 signature after various agreements in the "Legal Acknowledgments" section of the application
12 which includes a "Mutual Agreement Regarding Arbitration and Class Claims" that reads:

> **MUTUAL AGREEMENT REGARDING ARBITRATION AND CLASS CLAIMS**
>
> In the event there is any dispute between Employer and I relating to or arising out of or relating to [sic] my employment or the termination of my employment, which Employer and I are unable to resolve informally through direct discussion, regardless of the kind or type of dispute, Employer and I agree to submit all such claims or disputes to be resolved by final and binding arbitration in accordance with the National Rules of the Resolution of Employment Dispute of the American Arbitration Association within the state of employment. Said disputes may include but are not limited to claims for or under: breach of contract, fraud, misrepresentation, defamation, personal injury, wages salary, wrongful termination, vacation pay, sick pay, overtime pay, the Fair Labor Standards Act and comparable state laws, the Civil Rights Act of 1965, as amended, 42 U.S.C. section 1981, the Americans with Disabilities Act, laws that prohibit discrimination based on religion, sex, age, color, nationality, physical impairment, disability, medical condition, marital status, or other basis, the Family and Medical Leave Act, the Employee Retirement Income Security Act (ERISA), and state laws regarding unfair competition or unfair business practices.
>
> Any such claims must be submitted on an individual basis only and I hereby waive the right to bring or join any type of collective or class claim in arbitration, in any court, or in any other forum. This class/collective action waiver does not apply to claims brought under the National labor Relations Act (NLRA).

28 Gleason Decl. Ex. A.

2

Most of the agreements in the Legal Acknowledgments section are mandatory fields and include red asterisks next to them. Gleason Decl. ¶ 6. The arbitration agreement is not mandatory as it does not have a red asterisk next to it, and it is possible for an applicant to submit the application without completing and e-signing the arbitration section. *Id.* Real Time contends that Gonzalez voluntarily e-signed the arbitration agreement as part of completing her online application. *Id.* ¶ 11.

Real Time moves to compel individual arbitration, arguing that Gonzalez is bound by the arbitration agreement she initialed when she filled out Real Time's online job application. Because this arbitration agreement includes a waiver for class claims, Real Time also moves to dismiss Gonzalez's class claims and to stay her PAGA claims, which are not subject to the arbitration agreement. CEVA, which is not a signatory to the arbitration agreement, joined Real Time's motion to compel and seeks to compel Gonzalez to arbitrate her claims against CEVA, to dismiss Gonzalez's class claims, and to stay the PAGA claims.

In opposition to the motion to compel, Gonzalez argues that the arbitration agreement is not enforceable because (1) Real Time has failed to show that Gonzalez signed the arbitration agreement or that the agreement is valid, (2) the class waiver provisions in the agreement are invalid under the National Labor Relations Act ("NLRA"), and (3) the agreement's purported waiver of PAGA claims is unenforceable and invalidates the entire agreement. In opposition to CEVA's joinder, Gonzalez contends that CEVA cannot compel arbitration as it is not a signatory to the agreement and Gonzalez's claims do not arise out of the contract. I heard argument on September 28, 2016, and Real Time submitted supplemental briefing on October 12, 2016.

**LEGAL STANDARD**

I. **MOTION TO COMPEL ARBITRATION**

Under the Federal Arbitration Act ("FAA"), a district court determines (1) whether a valid

agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (internal citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999).

## II. MOTION TO STAY

"Under § 3 of the FAA, if any suit or proceeding is brought in a court of the United States upon any issue that is referable to arbitration under such an agreement, the court "shall . . . stay the trial of the action." 9 U.S.C. § 3; *see also AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 131 (2011). Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts have "discretion whether to proceed with the nonarbitrable claims before or after the arbitration and have authority to stay proceedings in the interest of saving time and effort for itself and litigants." *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 870 (N.D. Cal. 2015) (internal quotation omitted); *see also Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863–64 (9th Cir. 1979). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (internal quotation marks and citations omitted).

## III. JOINDER

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (internal quotation marks and citations omitted). In general, "the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Id.* "The strong public policy in favor

4

1    of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy*
2    *Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009).

**DISCUSSION**

IV. **MOTION TO COMPEL**

  A. Valid Agreement

Gonzalez argues that Real Time failed to show the existence of a valid arbitration agreement because it has not demonstrated that Gonzalez herself personally affixed the signature on the agreement.  Opposition to Motion to Compel ("Oppo.") at 1 (Dkt. No. 22).  Real Time asserts that it has presented sufficient evidence of a valid contract because only Gonzalez could have filled out the personal information in her online application and it has ample safeguards to confirm the accuracy of the signature.  Mot. at 2.

"The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 842 (2014).  "Authentication of a writing means (a) the introduction of evidence *sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is* or (b) the establishment of such facts by any other means provided by law." *Id.* at 843.  "*The act of the person may be shown in any manner,* including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9(a).

Here, the issue is whether Real Time has met its initial burden of proof by providing adequate evidence to support the authenticity of Gonzalez's signature.  Real Time has submitted a declaration from Joshua Gleason, the Director of Human Resources at EmployBridge, Real Time's parent company, which outlines Real Time's procedures and process for accepting online applications.  Gleason Decl. ¶ 1.  Gleason declares that an online application is "electronically date and time stamped" and is unalterable once submitted.  Gleason Decl. ¶ 8.  Once the application is submitted, only a handful of individuals are able to access the files.  *Id.*  Real Time submits an authenticated copy of plaintiff's application that states, "Diana Gonzalez initiated,

United States District Court
Northern District of California

signed, and dated this form on the following date(s): 07/07/2015 @ 1:44: AM." Gleason Decl. Ex. C.

Gonzalez argues that Real Time has not shown its procedures were "such that only the plaintiff could have accessed the electronic form and performed the act which constituted the electronic signature." *Espejo v. S. Cal. Permanente Med. Group*, 246 Cal. App. 4th 1047, 1060 (2016). In *Espejo*, the court found the defendants met their burden in showing the electronic signature was authentic as the defendant "detailed [defendant]'s security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement . . . ." *Id.* at 1046. The court found that the plaintiff's name would have only been entered by using the plaintiff's unique user name and password. *Id.* Here, while Real Time's application did not require a unique username and password, it required applicants to fill out detailed personal information that only the applicant would know. Gleason Decl. ¶ 11. Defendant Real Time has offered adequate evidence that only Gonzalez could have filled out this form, that the document could not have been altered after it was submitted, and that Gonzalez herself signed the arbitration agreement.

Gonzalez has failed in response to allege that she did not sign the agreement or otherwise call into question the authenticity of the signature.[1] Gonzalez does not dispute the accuracy of any of the information in her online application or offer an explanation as to how someone else could have known such information or submitted the application in her name. She merely alleges that "the database could have been altered at any time." Oppo. at 2. This bare allegation is insufficient to undermine Gleason's declaration that the database could not have been altered. Gleason ¶ 8.

Real Time has met its burden to show the authenticity of Gonzalez's signature and the

---

[1] In response to CEVA's Joinder, Gonzalez submitted, for the first time, a declaration stating that she has "no recollection of filling out an online form to apply for employment with Select Staffing or CEVA." Gonzalez Decl. (Dkt. No. 29-1). Real Time objects to this declaration as constituting an improper Sur-reply to Real Time's Motion to Compel and requests that I strike the declaration. Dkt. No. 30. Because Gonzalez offers no explanation as to why she did not include this declaration in her original response to Real Time's Motion to Compel and Real Time was not given an opportunity to respond to or address the declaration's statements, I do not consider the declaration to the extent it relates to Real Time's Motion to Compel.

existence of a valid agreement.

### B. Class Waiver

Gonzalez asserts that the class action waiver in the arbitration agreement is unenforceable under the National Labor Relations Act ("NLRA") and the Ninth Circuit's recent decision in *Morris v. Ernst & Young*, No. 13-16599, 2016 WL 4433080 (9th. Cir. Aug. 22, 2016). Oppo. at 3; Dkt. No. 27.

In *Morris*, Ernst & Young moved to compel arbitration of plaintiffs' Fair Labor Standards Act misclassification and wage and hour claims. *Morris*, 2016 WL 4433080, at *1. The plaintiffs had signed agreements, as a condition of employment, which required employees to "(1) pursue legal claims against [defendant] exclusively through arbitration and (2) arbitration only as individuals and in 'separate proceedings.' " *Id*. In opposition to the motion to compel, plaintiffs argued that the arbitration agreement's class waiver provision violated §7 of the NLRA which grants employees the right to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. *Id.*

The *Morris* court held that "a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under §7 of the [NLRA]." *Morris*, 2016 WL 4433080, at *3-4 (internal quotation omitted). The court concluded that Ernst & Young interfered with its employees' substantive right to concerted activity under the NLRA by requiring employees, as a condition of employment "to pursue work-related claims individually." *Id.* at 5:

Real Time contends that its arbitration agreement is distinguishable from the agreement in *Morris* because it was not a condition of Gonzalez's employment. Reply at 7 (Dkt. No. 28). It asserts that Gonzalez was not required to sign the arbitration agreement because it was not a mandatory field in the online application and Gonzalez could have submitted the form without initialing that portion of the document. Gleason Decl. ¶ 6. Real Time submits that the Ninth Circuit's decision in *Johnmohammadi v. Bloomingdale's Inc.*, 755 F. 3d 1072 (9th Cir. 2014), not *Morris*, controls this case.

1  The *Morris* court specifically distinguished the holding in *Johnmohammadi* and noted that an arbitration agreement does not violate the NLRA, and is not a condition of employment, when employees have a meaningful opportunity to opt out of the agreement. *Morris*, 2016 WL 4433080 at *4 n.4. In *Johnmohammadi*, the Ninth Circuit enforced an arbitration agreement that precluded collective action because employees were able to opt out of the agreement by submitting an opt-out form within 30 days of hiring. *Johnmohammadi*, 755 F. 3d at 1074. The Ninth Circuit concluded that under these circumstances the plaintiff "made a fully informed and voluntary decision" not to opt-out of the arbitration agreement, and the agreement, therefore, did not violate the NLRA. *Id.*

Real Time has not shown that its arbitration agreement presented applicants with the same meaningful opportunity to opt out. Real Time submits that Gonzalez was not required to sign the arbitration agreement, and that this was indicated by the lack of an asterisk next to the initial box that followed the phrase "Please initial and consent for MUTUAL AGREEMENT TO ARBITRATE section." Gleason Decl. Ex. A; Gleason Decl. ¶ 6. Although the instructions in the Employment History section of the online application indicated that mandatory fields, in that section, would be marked by a red asterisk, the application did not include any explanation of the significance of the asterisks generally throughout the document, did not address them in the Legal Acknowledgements section, and did not explain, anywhere, that fields without an asterisk were completely optional. *Id.*

An employer does not provide employees a meaningful opportunity to opt out of an arbitration agreement when it fails to provide any opt-out procedure and does not otherwise explain to employees that they may opt out. *See Gerton v. Fortiss, LLC*, No. 15-cv-04805-TEH, 2016 WL 613011, at *5 (N.D. Cal. Feb. 16, 2016). In *Gerton*, the court rejected the idea that employees could have opted out of an agreement by simply choosing not to sign it, explaining that "even assuming that failing to initial the line would suffice to opt out, such a procedure for opting out is not described anywhere in the Arbitration Agreement." *Id.* In contrast, the Ninth Circuit has consistently upheld agreements where employers provide a clear, even if potentially burdensome, process for opting out. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th

1  Cir. 2002) (concluding that employee had a meaningful opportunity to opt out where he could
2  mail in opt out form within 30 days of signing agreement); *Mohamed v. Uber Tech., Inc.*, --F.3d--,
3  2016 WL 4651409, *5-6 (9th Cir. 2016) (Uber drivers had a meaningful opportunity to opt out
4  even though they were required "to opt out either in person at Uber's San Francisco offices or by
5  overnight delivery service"); *cf. Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir.
6  2013) (meaningful opportunity to opt out where document explained that signatories could opt out
7  by submitting a writing, within 60 days, rejecting the arbitration provisions).

8  Absent the absence of an asterisk, Real Time's online application did not indicate that the arbitration agreement was optional and did not explain to applicants that they could opt out of the agreement by choosing not to initial it. Gleason Decl. Ex. A. The lack of an asterisk does not provide employees a clear and meaningful opportunity to opt out. An explanation of the possibility and procedure for opting out need not be detailed or complex. "A simple sentence such as, 'If you wish to opt out of this class action waiver, do not initial this line,' may have sufficed." *Gerton*, 2016 WL 613011, at *5. Real Time did not include any such language. Instead, the agreement misleadingly instructed, "Please initial authorization and consent for MUTUAL AGREEMENT TO ARBITRATE section." Gleason Decl. Ex. A. This mirrored the language used in the six required legal acknowledgment sections and signaled to applicants that they were required to initial the arbitration agreement.

19  Because Real Time's online application did not adequately notify applicants that they were not required to initial the arbitration agreement, and Real Time did not provide applicants with any other procedure for opting out, I conclude Gonzalez did not have a meaningful opportunity to opt out of the arbitration agreement and that the agreement was effectively a condition of her employment. *Morris*, not *Johnmohammadi*, is applicable to this case.

24  Real Time argues that even if *Morris* applies, its arbitration agreement is distinguishable from the one in *Morris* because the class waiver does not apply to "claims brought under the National Labor Relations Act (NLRA)." Reply 9. Real Time contends that under the Fifth Circuit's decision in *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015), a class waiver is enforceable where the arbitration provision allows employees to seek redress before the NLRB.

1  *Id.* In *Murphy Oil*, the Fifth Circuit held that an arbitration agreement with a class waiver did not
2  constitute an unfair labor practice under § 8 of the NLRA because it clearly stated that employees
3  were not barred from "participating in proceedings to adjudicate unfair labor practice[ ] charges
4  before the" NLRB. *Id.* at 1018.
5        While Real Time's agreement may satisfy the *Murphy Oil* court, it does not satisfy the
6  Ninth Circuit's holding in *Morris*. The right to bring claims before the NLRB is separate and
7  additional to the rights outlined in *Morris*. Allowing employees to pursue claims before the
8  NLRB is not enough – under *Morris*, employers must also allow employees some forum to
9  "pursue work-related legal claims together." *Morris*, 2016 WL 4433080, at *2. Real Time's
10 NLRA-claim carve out does not bring it into compliance with *Morris*.
11       Real Time also argues that its agreement is distinguishable from that in *Morris* because it
12 does not require employees to bring claims in "separate proceedings." Real Time has attempted to
13 limit the impact of *Morris* to employment agreements which require "separate proceedings" and
14 argued that because there is no "separate proceedings" language in its agreement and Gonzalez
15 could theoretically pursue her individual arbitration claims together with other plaintiffs in one
16 proceeding, the Real Time agreement does not prohibit all concerted activity in violation of the
17 NLRA. That argument ignores that both the majority and dissent in *Morris* refer to the "separate
18 proceedings" clause at issue there as a class action waiver, which is what is at issue here. *Morris
19 v. Ernst & Young, LLP*, No. 13-16599, 2016 WL 4433080, at *2 n.1 & *4 n.3 (9th Cir. Aug. 22,
20 2016); *see also id.* at *11, 12 (dissent). In addition, the majority affirmed the NLRB's
21 determination that any agreement that precludes employees from filing "joint, class, or collective
22 claims" violates the NLRA. *Id*. at * 2, 5.[2] Finally, even if *Morris* could be so limited, and I am
23 not finding that it can, the Real Time agreement itself requires that parties to the agreement agree
24 that "claims must be submitted on an individual basis only and I hereby waive the right to bring or

---

[2] As the *Morris* court noted, § 7 of the NLRA protects concerted action for the purpose of "collective bargaining or other mutual aid or protection." *Id*. at *3 (quoting 29 U.S.C. § 157). By the nature of the rules and statutes creating them, class and collective actions are appropriate only where they serve the "mutual aid" of the other class members. *See* Fed. R. Civ. P. 23(a) & (b)(3); 29 U.S.C § 216(b) (allowing employees to initiate a collective action on behalf of "similarly situated" employees).

join any type of collective or class claim in arbitration." Gleason Decl. Ex. A. That provision arguably requires separate initiation of arbitration proceedings, and does not expressly permit employees to join together to arbitrate their individual claims. Real Time's argument that its agreement preserves a limited right to concerted action is without support.

I am bound by the Ninth Circuit's holding in *Morris* and conclude that an arbitration agreement that employees cannot meaningfully opt out of, and that waives all joint, collective, and class claims, is not permitted under § 7 of the NLRA. Real Time's class waiver is unenforceable.

### C. Severability and Enforcement of Class Arbitration

The next issue to consider is whether the entire arbitration agreement is unenforceable, or whether the unlawful class waiver can be severed from the rest of the agreement. Under the Ninth Circuit's ruling in *Morris*, a district court must determine whether to sever an invalid class waiver prior to enforcing an arbitration agreement. 2016 WL 4433080, at *11. "It is well established that a federal court has a duty to determine whether a contract violates the law before enforcing it." *Id.* (remanding to the district court "to determine whether the 'separate proceedings' clause is severable from the contract"). I must therefore decide whether to strike the class waiver from Real Time's agreement and compel arbitration of Gonzalez's class claims, or decline to enforce the agreement at all.

In its supplemental brief, Real Time argues that, if the class waiver is found unenforceable, the court cannot compel arbitration of the class claims under the Supreme Court's holding in *Stolt-Nielsen S.A. v. Animal Feeds Int'l. Corp.*, because the parties did not contract to submit to class arbitration. 559 U.S. 662, 684 (2010). I agree.

As the Court affirmed in *Stolt-Nielsen*, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* In *Stolt-Nielsen*, the Court considered whether there was a contractual basis to compel arbitration of class claims where the arbitration agreement was silent on class and collective actions. *Id.* at 685. The Court determined that where the agreement was silent and the parties stipulated that they had "no agreement" on the issue, an arbitrator overstepped his authority by concluding that the parties had "*agreed to authorize* class arbitration" and compel arbitration of class claims. *Id.* at 687.

11

There is no contractual basis to conclude that Real Time and its employees "agreed to authorize class arbitration" because the arbitration agreement specifically attempts to waive the right to bring such claims. Unlike the agreement in *Stolt-Nielsen*, Real Time's arbitration agreement is not silent on class claims and instead explicitly aims to prevent them. Although I have concluded that this provision is unenforceable under *Morris*, this language unambiguously precludes a finding that the parties intended to agree to authorize arbitration of class claims. The express language of the agreement indicates that they intended the opposite. Because the parties did not agree to arbitrate class claims, they "cannot be compelled under the FAA to submit to class arbitration." *Id.* at 684.

Enforcing Real Time's arbitration agreement, without the class waiver, would still run afoul of *Morris* because the parties cannot be compelled to submit to class arbitration. There is no contractual basis for compelling Real Time and its employees to arbitrate joint, collective, and class claims because the arbitration agreement affirmatively attempts to bar them. An arbitrator would overstep her authority by compelling the parties to submit to arbitration on such claims. This means that if the arbitration agreement is enforced, even without the class waiver, Gonzalez would still be limited to pursuing individual actions in arbitration. And under *Morris*, such a procedure would violate the NLRA by preventing Gonzalez from pursing her employment claims through collective action.

Because enforcement of Real Time's arbitration agreement without the class waiver would still violate *Morris,* I conclude that the class waiver provision cannot be severed from the agreement and that the entire arbitration agreement is unenforceable. I DENY Real Time's motion to compel arbitration and DENY its motion to dismiss class claims.

## V.  MOTION TO STAY PAGA CLAIM

Real Time moves to stay Gonzalez's PAGA claim until the arbitral claims have been completed. Mot. at 16. Because the motion to compel arbitration is denied, this motion is DENIED as MOOT.

## VI. CEVA'S MOTION TO JOIN DEFENDANT'S MOTION TO COMPEL ARBITRATION

Co-defendant CEVA moves to join Real Time's Motion to Compel Arbitration. Joinder at

1 (Dkt. No. 24). CEVA's Joinder motion is DENIED as MOOT.

## CONCLUSION

Because the class waiver provision in Real Time arbitration agreement violates the NLRA, Real Time's Motion to Dismiss Class Claims is DENIED. Because the parties cannot be compelled to arbitrate Gonzalez's class claims, Real Time's Motion to Compel Arbitration is DENIED and its Motion to Stay PAGA Claims is DENIED as MOOT. CEVA's Joinder of Real Time's Motion to Compel is DENIED as MOOT.

**IT IS SO ORDERED**.

Dated: October 31, 2016

WILLIAM H. ORRICK
United States District Judge